# CHARLESTON.

## DUVAL v. CRAWFORD *et als.*

### Submitted June 6, 1912.   Decided November 4, 1913.

1. BOUNDARIES—*Description in Deed—Mistaken Courses.*

    A grant of 250 acres, ''to be run in a square form'' out of other lands of the grantor, according to a description correct as to distances but with false and mistaken courses by which the tract conveyed would not contain more than ten acres, will, in equity, be construed so as to effect the manifest intent of the parties as to quantity, if sufficient data appears for locating the acreage stated with reasonable certainty, when subsequent purchasers or adjoining owners are not prejudiced by such construction.   (p. 123).

2. SAME—*Location.*

    ·The four correct 200-pole distances, the beginning corner and the Simmons line therefrom called for, both definitely ascertainable, afford, when read in connection with the words ''to be run in a square form'', sufficient data for the proper location of the 250 acres according to the deed.   (p. 124).

3. VENDOR AND PURCHASER—*Notice—Prior Grants.*

    A deed conveying lands, by a boundary from which an acreage previously granted is thereby expressly excepted, operates as notice to the grantee therein, and those claiming under him, of the quantity conveyed in the former grant, although the description thereof is imperfect, especially if by such description location of the exception may be definitely ascertained.   (p. 124).

Appeal from Circuit Court, Kanawha County.

Bill by Francis Duval against E. T. Crawford and others. Decree for defendants, and complainant appeals.

*Reversed and Decree Entered Here.*

*W. S. Laidley,* for appellant.

*J. F. Cork* and *J. W. Kennedy,* for appellees.

LYNCH, JUDGE:

Plaintiff complains of a decree, in a suit by him to enforce a vendor's lien, allowing defendants an abatement of purchase money because of deficiency in acreage of land conveyed to them.   He acquired the land by deed from Mrs. Woody in 1868, through her agent, Caanan Simmons, who had himself

purchased from her a tract of 100 acres. According to his contract of purchase, Duval was to have 250 acres "in a square form", for which he then paid cash, at the rate of $2.50 per acre. Kendall was instructed by Simmons to survey the land accordingly, and later reported that he had run it off in the form of a square, and drew the deed to Duval, inserting therein the following description: "Beginning on a black gum and dogwood, *corner to the survey made for Caanan Simmons,* thence N 25 E *200 poles* to two chestnut oaks; thence S 30 W *200 poles* to two dogwoods; thence S 25 W *200 poles* to two small chestnuts; thence N 30· E *200 poles, with Caanan Simmons' line,* to the beginning; *containing 250 acres, to be run in a square form".* By deed of June 1, 1903, by the same description, and with covenants of general warranty, Duval conveyed the land to Crawford and Stine for $2250 cash, and $4000 evidenced by their note at one year. On the same day, they conveyed the coal therein to the Blue Creek Coal & Land Company.

The note for $4000 not being paid at maturity, plaintiff instituted this suit to enforce the vendor's lien retained by him for its security. Crawford and Stine allege in their answer, and testify, that the sale to them was one by the acre; that plaintiff represented to them there were 250 acres in the tract, on which representation they relied; but that, on actual survey, there were found to be only 190 acres. Wherefore, they ask a proportionate abatement of purchase money. The decree appealed from is complained of on the ground alone that they were allowed this relief.

The record is largely taken up by the testimony of Hill, who surveyed the land in 1904 for the plaintiff, and Pearson, who surveyed it in the same year for the defendants. It is admitted by the plaintiff that the description in the deed to him, and in the one by him to Crawford and Stine, is false. In fact, it is absurd on its face. It appears, from a survey in evidence, that a boundary run according to the courses and distances given would be a long narrow strip, of greatest width near its center and thence converging in both directions to a point, and containing perhaps not over ten acres. The deeds, however, clearly show the intention of the parties as to quantity; and the description, though inaccurate as to courses, is suf-

ficiently certain to enable a surveyor to locate, without difficulty, a tract containing the acreage stated in the deeds. Hill, by starting with the black gum corner, easily ascertainable, and by using the four 200-pole distances, and the Simmons line as a base, had no difficulty in surveying the tract in the form of a 250 acre square, as called for in both deeds. Pearson testifies that his survey, by which he ascertained the quantity to be 190 acres, was made, not strictly according to the calls in the deeds, but by variations therefrom based on the personal assurance of plaintiff as to the location of the exterior boundaries of his lands. In fact, neither of the surveyors did, or could, follow the unreasonable courses in the deeds; and neither of them attempted to do so. Yet Hill's survey accords both with reason and the apparent intention of the parties. It is taken by us as correctly determining the acreage sold by Duval to the defendants.

But there is an additional and decisive circumstance of identification of the quantity conveyed in the two deeds. Mrs. Woody, when she conveyed to Duval, owned a large tract of 4400 acres in its natural state, embracing the land purchased by him. In 1889, under court decree against her, special commissioners Warth and Knight conveyed to Louisa D. Cracraft, out of said 4400 acre tract, 1500 acres, which included within its bounds his 250 acres and the Simmons 100 acres. In the deed by the commissioners "it is expressly understood that the 100 acres and the *250 acres* conveyed to Simmons and Duval are excepted and reserved from this conveyance". Crawford and Stine have also purchased the Cracraft and the Simmons tracts. Pearson, upon a survey for defendants, ascertained that the Cracraft, Simmons and Duval tracts contained 2062 acres, instead of 1850 acres according to the deeds, an excess of 212 acres, in which respect ordinarily Duval would have no interest. But, when his and the Cracraft deed to Crawford and Stine are read together and in the light of the facts stated, it readily appears that Crawford and Stine acquired title to the entire 250 acres accredited to Duval. Their deed from Cracraft, by expressly excepting or reserving the Duval 250 acres and the Simmons 100 acres, and conveying only the residue, which it stated contained 1500 acres, clearly manifests an intention by the grantor to concede both

quantities to the former purchasers, Duval and Simmons, and their location within the boundary conveyed by that deed. It purported to convey only what remained. It could not properly pass title to a greater quantity. Crawford and Stine had notice that it passed title to no more. Their own deed and the deed to Mrs. Cracraft both notified them that Duval had 250 acres of land within the boundary conveyed. They knew that fact. It could not have escaped their observation. Whether they knew or did not know, is immaterial. Having the means of knowledge, the presumption is they knew all the facts expressed by deeds in their chain of title. Their claim to an abatement from the purchase money due by the $4000 note is, under these circumstances, inequitable, and can not be allowed.

Therefore, the exact location of the 250 acres is immaterial, except by way of enforcement of the lien retained in the Duval deed by a sale of the land. For this purpose, and in view of the circumstances detailed, the boundaries ascertained by the Hill survey, which adopts the black gum and dogwood, the beginning corner of the Woody deed to Duval, and the Simmons line therefrom, as far as it extends, as a partial base, seems to accord fully with the real intent of the deed to Duval and from him to Crawford and Stine. At least, Hill's location of the 250 acres does not injure or prejudice any of the defendants, or any other person so far as the record before us discloses. Its boundaries are: Beginning at the black gum, corner to the Simmons tract, on a south hillside below a large rock, thence S 33 W 200 poles to a stone planted on a hillside facing a branch of Falling Rock Creek; thence N 57 W 200 poles to a stone planted on a high point; thence N 33 E 200 poles to a stone planted on the hillside facing a branch of Wolfpen Hollow; thence S 57 E 200 poles to the beginning, being an exact square, and containing 250 acres.

The circuit court, therefore, should have ascertained the true boundaries of the Duval 250 acre tract as thus designated by Hill, required Crawford and Stine to pay Duval the amount of the $4000 note with interest from June 1, 1904, and in default of payment decreed a sale of the tract as so ascertained. Not having done so, this court will reverse the decree of July 1, 1911, and enter such decree here as the circuit court

should have entered, upon the same terms and conditions except as to amount and acreage, and name the same commissioners to execute the decree as are contained in the decree by the lower court. And such decree is accordingly directed.

*Reversed and Entered Here.*